## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR PALMER BREWSTER, | ) | |
| ID # 917242, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:06-CV-1955-P (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a March 23, 2000, conviction for murder in Cause No. F98-39469-PS. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

In April of 1998, the State indicted petitioner for murder. The indictment also alleged that petitioner had used and exhibited a deadly weapon in the commitment of the murder. (Trial Transcript at 2). After he pled not guilty to the charged offense, on March 21-23, 2003, petitioner was tried before a jury, found guilty, and sentenced to thirty-five years of imprisonment. (Trial

Transcript at 44, 55, 57).

The facts presented at the guilt phase of petitioner's trial established that petitioner shot and killed Kevin Ward during a domestic dispute. According to testimony given by Latreesa Keeton, she had dated petitioner in the past and was friends with him; Ward was the father of her three children. (R. 4:47, 50-51, 56). On March 14, 1998, petitioner had called Keeton to let her know he was in town from Houston. He came by her apartment and went shopping with her, and they returned to the apartment with her children. About an hour later, Ward called Keeton. During this conversation, they argued. Ward also told Keeton that he needed a uniform shirt for work the next day, and he then went to Keeton's apartment because he believed that he had left the shirt there. After Keeton opened the door, Ward burst through. Keeton tried to keep him from entering, and Ward pushed her aside, causing her to slip on a rug. Ward then went upstairs towards the bedroom, where petitioner was located. Ward was angry because petitioner was in the apartment. (R. 4:59-67, 72-4). Petitioner was waiting at the top of the stairs, and he shot Ward once in the chest when he walked around the bannister after reaching the first landing. After Ward ran out of the apartment, petitioner chased after him and shot at him two more times as he ran down the sidewalk. Ward subsequently died from the gunshot wound to his chest. (R. 4:32, 78-91). Keeton further testified that Ward envied petitioner, did not want him around, and had made threats towards him when talking to her. Keeton never saw Ward reach for any weapon that night, never saw a weapon on him that night, and had never seen Ward with a gun. (R. 4:82-3, 102, 106, 143-44). Keeton also testified that petitioner left messages for her encouraging her to lie and say that the altercation happened outside after Ward was seen "messing" with someone's car. The message was played for the jury. (R. 4:99-103; State's Ex. #32, 33).

Petitioner testified on his own behalf. He testified that on the night in question, while he was upstairs taking a shower and getting ready at Keeton's apartment, he heard Keeton arguing on the telephone with Ward. He tried to get dressed so that he could leave quickly, and he heard Ward hollering outside for Keeton to open the door and throwing rocks at one of the windows. When she came upstairs to get Ward's clothes, petitioner told her not to open the door. Petitioner later heard them struggling downstairs; Ward was cursing and told Keeton that if he could not be there, no-one could be there. Petitioner heard Keeton tell Ward that petitioner had a gun, and Ward responded that he did not "give a fuck" and that he had "something for his ass." Petitioner further testified that when Ward began climbing the stairs, he told Ward that he had a gun. Ward reached for his coat, and petitioner shot him one time. Petitioner further testified that he believed that Ward had a gun because of the statements he made before climbing the stairs and because he reached for his coat pocket. (R. 4:194-203, 208). Petitioner testified that he shot the next two shots in the air outside so that Ward would keep running and not come back, and he encouraged Keeton to lie about the circumstances surrounding the shooting because she had expressed fear that CPS would take her children from her. (R. 4:211-13).

Petitioner testified on cross-examination that he obtained the .32 caliber gun used to shoot Ward out of a box of items that he hauled away from a home as part of his job. Petitioner also testified that after taking the gun, he donated the rest of the items to the Goodwill. (R. 4:218-19). Petitioner further acknowledged that he did not have a permit to travel with the gun from his home in Houston to Dallas. (R. 4:220-21). He also testified that he threw the gun out of his car while driving back to Houston because he was scared. (R. 4:223).

There was also testimony given by a friend of petitioner's, David Smiles, that petitioner met

him and his fiancé at a club later that evening. Petitioner seemed a little depressed, but he drank several drinks with his friends and never mentioned anything about a shooting during the two hours he was at the club. (R. 4:151-59).

In his direct appeal, petitioner alleged that he received ineffective assistance of counsel with regards to his motion for new trial. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Brewster v. State*, No. 05-00-00515-CR (Tex. App.–Dallas March 15, 2001, pet ref.'d). On February 12, 2002, petitioner filed a state application for writ of habeas corpus in which he alleged that he received ineffective assistance of counsel at both the guilt and the punishment phases of his trial and with regards to his motion for new trial. (S.H.Tr. IA[1]:53-77). After the trial court conducted a hearing on September 27, 2002 (*See* S.H.Tr. IB:4), and recommended relief in amended findings of fact and conclusions of law dated February 10, 2005 (*See* S.H.Tr. IC:2-12), the Court of Criminal Appeals granted petitioner's state application in part and ordered a new sentencing hearing. *Ex parte Brewster*, No. AP-75,114, slip. op. at 1-2 (Tex. Crim. App. March 16, 2005). At re-sentencing on January 20, 2006, petitioner received a sentence of sixty-five years. (S.H. Tr. II:40). Petitioner did not file a direct appeal from the re-sentencing, but he did file a second state writ application in which he asserted that the sentencing judge did not have jurisdiction to sentence him, that his sentence was illegal because it was beyond the statutory maximum, and that he is actually innocent of murder. The Court of Criminal Appeals denied

---

[1] "S.H.Tr. IA" refers to volume one of the state habeas transcript for cause number WR-57,678-02, which contains petitioner's state application, the state's response, and the trial court's initial findings. "S.H.Tr. IB" refers to the second volume, which contains the reporter's record from the state writ hearing held on September 27, 2002. "S.H.Tr. IC" refers to the third volume, which contains the trial court's amended findings. "S.H.Tr. II" refers to the state habeas transcript for cause number WR-57,678-03.

habeas relief without written order on October 4, 2006. (*See* S.H.Tr. II at cover[2]).

On October 23, 2006, petitioner filed a petition for federal habeas relief. Respondent filed an answer on March 19, 2007, (*see* Answer) and provided the state-court records. Petitioner filed a rebuttal pleading (hereinafter referred to as Reply) on March 27, 2007.

## A. Substantive Issues

Petitioner asserts the following claims:

(1) his trial counsel at his initial trial was ineffective in several respects;

(2) his due process rights were violated at his first trial because

-the prosecutors misled the jury, elicited false testimony and violated a motion in limine;

-one of the prosecutors was friends with the husband of one of the State's witnesses and one of the State's witnesses knew two of the jurors;

-petitioner's arrest was unconstitutional; and the indictment was defective and invalid;

(3) his counsel who represented him after his first trial on both direct appeal and his state writ was ineffective by

-failing to include certain affidavits with the state writ,

-only obtaining a new sentencing hearing so that he could try to "extort" money from petitioner's family to hire a new attorney, and
-failing to argue the claims regarding his arrest and indictment on direct appeal and the ineffectiveness of direct appeal counsel at the state writ level;

(4) petitioner's constitutional rights were violated at the re-sentencing hearing because

---

[2] The record before this court, including petitioner's second state writ application, the State's response, and the trial court's order that the pleadings be forwarded to the Court of Criminal Appeals, indicates that the trial court did not issue findings with respect to the second state application. Although the reason for this is not apparent in the record, the State did argue in its response that the application was procedurally barred as a subsequent writ because it only raised issues related to petitioner's first trial. Nevertheless, the Court of Criminal Appeals denied the application on its merits, and did not dismiss it.

-one of the jurors sat on his previous jury and one of the jurors knew the husband of one of the State's witnesses;

-the prosecutor told the jury during voir dire that anyone who failed to take the stand was hiding something;

-the prosecution paid witnesses to give false testimony;

-petitioner attempted to initiate a direct appeal but was prevented from doing so by his attorney and the state courts; and

petitioner was not given a sentence of time served;

(5) the judge from his first trial lacked the jurisdiction to sentence him; and

(6) the judge from his re-sentencing hearing also lacked jurisdiction to sentence him.

## B. Exhaustion

Respondent states that petitioner has only exhausted his state court remedies with respect to his first and his sixth grounds for relief, regarding the ineffective assistance of counsel at petitioner's first trial and the trial judge's jurisdiction at his re-sentencing. Respondent further argues that petitioner's other grounds for relief are procedurally defaulted. These defenses are discussed below in connection with the relevant claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies

Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because counsel: 1) failed to object to a prosecutor's statement during voir dire as being a misstatement of the law regarding self-defense; 2) failed to object to a comment made by a prosecutor during final statements at the guilt phase of the trial regarding the law of self-defense; 3) failed to make an offer of proof regarding what Latreesa Keeton would have testified to regarding the victim's history of violence; 4) failed to raise the affirmative defenses of self-defense and duress; and 5) made several errors during the punishment phase of his initial trial.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's

performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

**A. Prosecutor's Statement Regarding Self-Defense Law**

Petitioner contends that his trial counsel was ineffective for failing to object to a comment one of the prosecutors made voir dire. During voir dire at petitioner's initial trial, a member of the venire asked whether the fact that a gun used for self-defense was not registered would affect anything. Lead defense counsel Kenneth Witherspoon responded that in such a situation, while the person could be charged with unlawfully carrying a weapon, he could still raise self-defense, and the prosecutor objected to defense counsel's answer to the juror's question. During his objection, the prosecutor made the following statement:

> That could go to whether the person's reasonable or not. That goes to what the jury may do as a reasonable, ordinary person in that situation whether or not they have a gun illegally. You may consider that that – that was not reasonable. That could go to the jury's determination, so my objection would be, it could be – it's up to the

jury to –

* * *

His answer saying, no, I think it could be up to the jury to view that as reasonable.

(R. 3:134). The trial court admonished the venire not to speculate whether a person had a permit or not. Defense counsel then stated to the venire that although whether a person has a permit for a gun may be a factor in determining his reasonableness, it is not determinative of whether a person acted in self-defense. (R. 3:134-35). Earlier in voir dire, defense counsel had stated to the jury the law of self-defense and discussed this law in detail. (R. 3:114-129).

When this claim was addressed at the state habeas level, the trial court found that the prosecutor's statements regarding the law of self-defense were directed to the trial court as an explanation for his objection to defense counsel's statement. The trial court further found that under Texas law, the illegal carrying of a weapon could affect a defendant's right to claim self-defense under some circumstances. The trial court also found that defense counsel was able to explain the law of self-defense to the members of the venire, and the trial court concluded that trial counsel was not ineffective for failing to object to the prosecutor's statement. (S.H.Tr. IC:3-4, 10). The Court of Criminal Appeals denied relief on the basis of this claim. *See Ex parte Brewster*, slip op. at 2. This is not an unreasonable application of the *Strickland* standard.

Petitioner also contends that defense counsel were ineffective for failing to object to the prosecutor's statement regarding self-defense when he objected to defense counsel's answer to the juror's question. As the trial court on state habeas review noted, under Texas law, the use of force against another person is not justified if the defendant sought out the other person for a discussion

concerning differences between the two while the defendant was carrying, transporting, or carrying the weapon in violation of certain Texas statutes. *See* TEX. PENAL CODE ANN. § 9.31(b)(5) (Vernon 1993). Moreover, the Texas state law on self-defense states that a person's belief that force is immediately necessary to protect the person from another's use of or attempted use of force will not be presumed to be reasonable if the person claiming self-defense was engaged in criminal activity other than a Class C misdemeanor due to a traffic violation. *See* TEX. PENAL CODE ANN. § 9.31(a)(3). The unlawful carrying of a weapon is, at the very least, a Class A misdemeanor under Texas state law. *See* TEX. PENAL CODE ANN. § 46.02(b) (Vernon 1993). Accordingly, as noted by defense counsel later, the prosecutor's statement was a correct statement of the law in that whether a person is carrying a weapon illegally can be considered in whether a person acted reasonably, because a person would not presumed to be reasonable. Counsel was not ineffective for failing to object to a correct statement of the law. Moreover, petitioner has failed to show any prejudice because defense counsel was able to discuss the law of self-defense with the venire in thorough detail, and petitioner has not shown a reasonably probability that, had counsel objected to this one statement, he would not have been found guilty of murder by the jury. Defense counsel was not ineffective in this respect.

**B.  Prosecutor's Closing Argument**

Petitioner next asserts that defense counsel was ineffective for failing to object to a comment made by one of the prosecutors during closing statements. During closing statements at the guilt phase of petitioner's trial, after acknowledging that the only real issue for the jury to decide is whether petitioner acted in self-defense in shooting and killing Kevin Ward, one of the prosecutors made the following comment:

A very important point was asked by a female juror right toward the end before the end when we [sic] making comments in jury selection. She asked a question about, "Well, does it matter if self-defense is an issue if the person had a gun illegally?" Remember that question?

You remember what I said? "Yes, that a jury can look at that in determining whether or not the person was reasonable to be in that situation in the first place."

In other words, by breaking the law, by carrying a gun illegally, you can use that fact in deciding what a reasonable person would do. See, you may decide right away that's not reasonable to break the law and then try to use the law of self-defense to your advantage when you killed someone. And I'll ask you to start there by using your common sense.

(R. 5:30-31). The prosecutor went on to argue that petitioner did not act reasonably in shooting Ward because: petitioner "started it" by carrying a gun illegally; petitioner had been drinking; he had a gun around children; the angle of the gun shot showed that Ward was not face-to-face with petitioner when shot; petitioner ran after Ward and shot at him two more times; petitioner left the scene even after Keeton asked him to stay; petitioner threw the gun away; petitioner called Keeton later and tried to convince her to lie for him; and petitioner went to a club after the shooting. (R. 5:31-4).

Defense lead counsel then argued during his closing that petitioner acted reasonably because Ward threatened petitioner, Ward broke into the apartment when he pushed past Keeton and entered without permission, Ward was legally intoxicated, Ward continued towards the stairs even while Keeton hung on him and tried to get him to stop, Ward said that he had "something for [petitioner's] ass" too after Keeton told Ward that petitioner had a gun, and petitioner did not shoot at Ward outside the apartment but shot in the air to get him to leave. (R. 5:36-41). Defense co-counsel Phillip Parker also argued that petitioner acted reasonably because Ward had been told by

12

Keeton earlier that day not to come over to her apartment; Ward used drugs and had been "kicked out" several times by Keeton over his use of drugs; Keeton testified that Ward was a "woman beater" and that they would fight; Ward was a convicted felon; Ward was in a rage and meant to hurt petitioner; and petitioner remained upstairs, was not the aggressor. and warned Ward that he had a gun. (R. 5:42-5).

When this claim was addressed at the state habeas level, the trial court, after noting that the prosecutor later argued that petitioner "started it" with illegally carrying a gun, found that the prosecutor's argument was not one that would be subject to an objection and then concluded that trial counsel was not ineffective for failing to object to this statement. (S.H.Tr. IC:4-5, 11). The Court of Criminal Appeals denied relief on this basis. *Ex parte Brewster*, slip op. at 2. This decision is not an unreasonable application of the *Strickland* standard.

Petitioner also asserts that defense counsel was ineffective for failing to object to the prosecutor's comment during closing statements about the illegal carrying of a gun. As noted earlier, however, this statement is a correct statement of the law regarding a person's reasonableness in acting in self-defense. Therefore, defense counsel was not ineffective for failing to object. Moreover, petitioner has failed to establish any prejudice because he has failed to show that had counsel objected and the objection been sustained, there is a reasonable probability that he would not have been convicted of murder. The comment made by the prosecutor was brief, and the prosecutor continued to argue that petitioner did not act reasonably as evidenced by the direction the bullet traveled, because petitioner ran after Ward and shot at him two more times, and because petitioner fled the scene, asked Keeton to lie about the situation, and met friends at a club. Given the brevity of this comment compared with the entirety of the prosecutor's argument, prejudice has not been

shown.  Counsel was not ineffective in this regard.

## C.  Offer of Proof

During defense counsel's cross-examination of Latreesa Keeton, the State objected when counsel asked Keeton about previous fights she had had with Ward on the basis that any specific act of misconduct on the victim's part was irrelevant.  This objection was sustained.  (R. 3:108-09). Petitioner contends that defense counsel should have made an offer of proof regarding what testimony counsel would have elicited from Keeton about her relationship with Ward.

When this claim was addressed at the state habeas level, the trial court first found that Latreesa Keeton testified on cross-examination by defense counsel that her relationship with the victim had been turbulent, that the victim had used drugs, and that the victim had been in jail.  The court further found that defense counsel elicited testimony from Keeton about the struggle she and the victim had prior to the victim being shot.  The trial court then found that petitioner had failed to show what additional evidence trial counsel would have presented in an offer of proof and concluded that counsel was not ineffective for failing to make an offer of proof at the time the State's objection was sustained. (S.H.Tr. IC:5, 10-11).  The Court of Criminal Appeals subsequently denied relief on this basis.  This ruling is not an unreasonable application of the *Strickland* standard.

As the trial curt found, Keeton testified on cross-examination that Ward had used drugs in the past and was using drugs at the time he was shot, she testified that they had fought in the past, she testified that Ward had been in prison (R. 4:108-11, 113).  She also testified that petitioner and Ward had had unpleasant telephone conversations in which petitioner became upset and that she had told Ward that he was not welcome in her home under any circumstances. (R. 3:114-17).  And, she testified that Ward barged in her apartment without permission, causing the door to push her

into the wall. (R. 3:125-26). Thus, defense counsel was effective in eliciting testimony from Keeton about her turbulent history with Ward and his drug use and aggressiveness. Petitioner has pointed to no further evidence that should have been presented in an offer of proof. Defense counsel was not ineffective in this regard.

## D. Affirmative Defenses

Petitioner next argues that trial counsel were ineffective for failing to raise the affirmative defenses of self-defense and duress. Respondent contends that these claims are unexhausted and procedurally barred and without merit.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989). While a federal court has limited discretion to stay a habeas petition and hold it in abeyance so a prisoner can return to state court to exhaust previously unexhausted claims, *see Rhines v. Weber*, 544 U.S. 269, 275 (2005), Texas law prohibits a prisoner from filing a second or successive application for post-conviction relief if the grounds stated therein could have been, but were not, raised in a prior state writ. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon 2005). Specifically, article 11.07, § 4 provides that the state habeas court may not consider the merits of or grant relief based on a subsequent application unless the application contains sufficient specific facts establishing that: 1) the claims could not have been presented previously in the previous application because the factual or legal basis for the claim was unavailable at that time; or 2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. Petitioner has not

alleged, much less shown, that these claims could not have been presented in his state writ application or that, but for constitutional error, no rational juror would have found him guilty of murder. *Id*. Procedural default at the federal habeas level occurs when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). Because these claims are unexhausted and because the state of Texas would now find them to be procedurally barred, these ineffective assistance claims are procedurally barred at the federal habeas level.

Moreover, even considering the claims on their merits as permitted under 28 U.S.C. § 2254(b)(2), they fail. Defense counsel did raise the defense of self-defense, and the jury was instructed on self-defense law in the jury instructions. (Trial Transcript at 34-6). Petitioner has pointed to no evidence offered at trial that he shot Ward under duress, so he has not shown that he was entitled to raise that defense. Petitioner is not entitled to relief on the basis of these claims.

**E.  Errors at Punishment**

Finally, petitioner alleges that defense counsel were ineffective in several respects at the punishment phase of his initial trial. However, as noted earlier, the Court of Criminal Appeals granted state habeas relief on the basis that petitioner received ineffective assistance of counsel at punishment and granted petitioner a new sentencing hearing. Because petitioner has already received relief in the form of a new punishment hearing, any complaints concerning the initial punishment hearing are moot. Petitioner is not entitled to relief based on his first ground for relief.

## IV.  DUE PROCESS CLAIMS

In his second ground for relief, petitioner asserts that his due process rights were violated at

his first trial because the prosecutors engaged in misconduct, his arrest was unconstitutional, and the indictment against him was defective and invalid. The State responds that these claims are unexhausted and procedurally barred.

Petitioner did not raise any of these claims on direct appeal or during the state writ process. Petitioner has not alleged, much less shown, that these claims would be considered by the state courts in a subsequent writ. Because these claims are unexhausted and because the state of Texas would now find them to be procedurally barred, petitioner's due process claims are procedurally barred at the federal habeas level.

Notwithstanding the procedural bar, petitioner's claims have no merit. Petitioner alleges that the prosecution presented false testimony at his first trial, misled the jury, and violated a motion in limine. The presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited, is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Petitioner has presented no support for his assertion that the prosecution elicited false testimony or misled the jury. As noted by respondent, the motion in limine concerned petitioner's testimony at punishment, and petitioner's claim was rendered moot when he was granted a new punishment hearing. With regard to petitioner's assertions that a prosecutor had an improper relationship with a witness and a witness knew two of the jurors, petitioner has made only conclusory allegations without any support whatsoever insufficient to show that his due process rights were violated in some manner. Petitioner's conclusory allegations of prosecutorial misconduct are insufficient to merit federal habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation).

17

Likewise, petitioner has presented no evidentiary or case law support for his assertion that his arrest without a warrant was unconstitutional or that the indictment against him was in some way defective. Fourth Amendment claims are not generally cognizable on federal habeas review, *Stone v. Powell*, 428 U.S. 465, 482 (1976), and the sufficiency of an indictment is a matter of state law, unless the indictment is so defective as to deprive the state court of jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir. 1991). Petitioner has not alleged, much less shown, that the indictment was so defective as to deprive the trial court of jurisdiction. Petitioner's second ground for relief is therefore both procedurally barred and without merit, and it should be denied.

## V. JURISDICTION OF TRIAL JUDGES

Petitioner asserts in two separate grounds for relief that the trial judge who presided over his initial trial and the trial judge who presided over his re-sentencing did not have jurisdiction to do so because neither was the elected judge of that district court. Respondent argues in response that petitioner's ground for relief regarding the judge at his initial trial is unexhausted and procedurally barred and that both grounds are without merit.

In his state writ filed in July of 2006, petitioner raised as a claim that the "sentencing" judge did not have jurisdiction to preside over his case. Respondent has read this ground as one asserting that the judge who presided over petitioner's re-sentencing hearing was without jurisdiction to hear the case. Accordingly, Respondent contends that petitioner has exhausted this ground but not the ground concerning his initial trial judge. While petitioner does refer generally to the "sentencing" judge in the state writ, he also makes references to Judge Zimmerman, the judge who presided over his initial trial. (*See* S.H.Tr. II:6, 13-4). Accordingly, as it is difficult to discern which judge

petitioner refers to in his state writ without determining whether either of these grounds is procedurally barred, this Court will address them on their merits.[3]

At both his initial trial and his re-sentencing, a visiting judge presided over the trial, rather than the elected judge of the district court in which petitioner was tried, Judge Karen Greene. (S.H.Tr. IA:112; Petitioner at 20-21). Petitioner contends that both visiting judges were therefore without jurisdiction to preside over his trial and sentencing. As Respondent notes, however, under state law, jurisdiction lies with the court itself, not the judge, as the judge is an officer of the court, he or she is not the court itself. *See Ex parte George*, 913 S.W.2d 523, 526 (Tex. Crim. App. 1996). And, this Court must defer to the state court's interpretation of its own law. *McKay v. Collins*, 12 F.3d at 69. The Court of Criminal Appeals denied this argument on its merits. Petitioner has not shown that this decision is contrary to federal law. These grounds are without merit, and it is recommended that they be denied.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his next ground for relief, petitioner asserts that the attorney who represented him on direct appeal and during his state writ was ineffective in several respects. The State responds that this claim is unexhausted and procedurally barred.

With regard to petitioner's assertions that his direct appeal counsel was ineffective for failing to raise certain claims on direct appeal after he was initially convicted of murder, petitioner failed to raise any claim that his direct appeal counsel was ineffective in the state writ he filed in February of 2002, after he was first convicted of murder (S.H.Tr. IA:53-77). Because these claims are

---

[3] *See Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

unexhausted and petitioner would be procedurally barred from raising them in a subsequent writ, petitioner's assertions that his direct appeal counsel was ineffective for not raising certain claims are procedurally barred. With regard to petitioner's assertions that his state writ counsel was ineffective in certain respects, the Supreme Court has held that state collateral proceedings are not constitutionally required, and states have no federal constitutional obligation to provide collateral relief to state criminal defendants. *Murray v. Giarrantano*, 492 U.S. 1, 10 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Because state post-conviction counsel is not constitutionally required, ineffective assistance of state habeas counsel cannot form the basis for habeas relief. *Coleman v. Thompson*, 501 U.S. at 752. Thus, petitioner's claims of ineffective assistance of state writ counsel are not cognizable.

Moreover, even when considered on their merits, these claims fail. Petitioner alleges that counsel was ineffective on direct appeal for failing to argue that his arrest was unconstitutional and the indictment against him was unconstitutional, but he cites no support for these contentions. In the context of appeals, the Constitution does not require an appellate attorney to advance every conceivable argument, and it can be effective assistance of counsel on appeal to focus on a few key issues. *Evitts v. Lucey*, 469 U.S. at 394; *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 920 F.2d 251 (5th Cir. 1990). Likewise, petitioner asserts that his state writ counsel was ineffective for failing to include certain affidavits with the state writ, for failing to argue that petitioner received ineffective assistance on appeal and for only obtaining a new sentencing hearing so that further money could be "extorted" from petitioner's family. Even were petitioner entitled to counsel during state collateral proceedings, which he is not, petitioner has not shown either a deficiency in representation or prejudice. Numerous affidavits were included with petitioner's state

writ, and petitioner has not shown that further affidavits were necessary or that a different result would have occurred.  In fact, petitioner was granted a new sentencing hearing based on a number of these affidavits.  Petitioner has also not shown that there was a basis for arguing that counsel was ineffective on direct appeal.  Finally, petitioner makes broad assertions that his state writ counsel "extorted" money from his family, but gives no support for these allegations and has failed to show how it was ineffective assistance of counsel when petitioner was, in fact, granted habeas relief in the form of a new sentencing hearing.  No relief is warranted based on this ground for relief.

## VII.  RE-SENTENCING ERRORS

Lastly, petitioner alleges a number of errors with regard to his re-sentencing hearing, including allegations of prosecutorial misconduct, juror bias, ineffectiveness of trial counsel in failing to raise certain issues and to file a direct appeal, the court's failure to give him a sentence equal to the time petitioner had already spent in prison, and the court's action in preventing him from filing an appeal.  Respondent responds that these claims are exhausted and procedurally barred.

As noted earlier, petitioner filed no direct appeal after his re-sentencing hearing.  Moreover, he failed to raise any of these issue in the state writ he filed in July of 2006. (S.H.Tr. II:2-36). Because these claims were not raised at the state level and could have been as the factual or legal basis of the claim was available at that time, and because the Court of Criminal Appeals would consider petitioner procedurally barred from raising these claims in a subsequent writ, these claims are procedurally barred at the federal habeas level. *See Coleman v. Thompson*, 501 U.S. at 735.

Moreover, even were these claims considered on their merits, they would fail.  Petitioner presents no support, record-based or otherwise, for his allegations of prosecutorial misconduct or his assertions that his counsel and the court prevented him from appealing his re-sentencing.  Without

any support for his allegations, habeas relief is unwarranted. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations do not raise a constitutional issue in federal habeas proceeding). With regard to petitioner's claim that the trial court erred in not sentencing him to time served, petitioner was re-sentenced by a jury. Petitioner could have been sentenced for any time period between five and ninety-nine years, and he had no right to be sentenced to a term that he preferred. This ground for relief is both procedurally barred and without merit and should be denied.

## VIII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his first, third, and sixth claims in his state writs. The Court of Criminal Appeals denied the first state writ based upon the findings of the trial court and denied the second state writ on its merits, and thus petitioner's claims were adjudicated on the merits. The decisions at the state level are consistent with applicable Supreme Court precedent. The decisions involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## IX. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 2nd day** of December, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE